IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| WILLIE WILLIAM SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 117-012 |
| | ) | (Formerly CR 115-063) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner Willie William Smith filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner raises numerous claims for relief, including an ineffective assistance claim that trial counsel failed to file a notice of appeal when directed to do so. The Court scheduled an evidentiary hearing on this "lost appeal" claim and appointed attorney Beau Worthington to represent Petitioner. Based on the evidence of record, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Indictment

On June 2, 2015, the grand jury in the Southern District of Georgia charged Petitioner and two co-defendants in a three-count indictment with one count of Armed Bank Robbery, one count of Conspiracy to Use One or More Firearms During a Violent Crime, and one

count of Using, Carrying, and Brandishing a Firearm During a Crime of Violence.  United States v. Smith, CR 115-063, doc. no. 1 (S.D. Ga. June 2, 2015) (hereinafter "CR 115-063"). The armed bank robbery and conspiracy charges carried a possible term of imprisonment of not more than twenty-five years and not more than twenty years, respectively.  CR 115-063, doc. no. 2.  The third charge of using, carrying, or brandishing a firearm carried a possible sentence of not less than seven years of incarceration *consecutive* to any other sentence imposed.  Id. at 2.  The Court appointed attorney Richard T. Pacheco, II, under the Criminal Justice Act to represent Petitioner.  Id., doc. no. 10.

**B.     Agreement to Plead Guilty**

A jury trial was originally scheduled for Petitioner and his two co-defendants, but co-Defendant Ricardo Mandrell Mobley was the first to accept a plea agreement from the government.  Id., doc. nos. 51, 55, 57-59.  Within approximately one week of co-Defendant Mobley entering his guilty plea, Petitioner also accepted a plea agreement from the government, and a change of plea hearing was scheduled.  Id., doc. entry Sept. 18, 2015; doc. no. 60.  On October 19, 2015, Petitioner pleaded guilty to Armed Bank Robbery.  Id., doc. nos. 70-72.  In exchange for the guilty plea, the government agreed to (1) dismiss the remaining two counts in the indictment; (2) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; and (3) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35.  Id., doc. no. 71, (Plea Agreement), pp. 3-5.

2

Petitioner's plea agreement contained the following factual basis for his guilty plea:

> On or about January 9, 2015, in Richmond County, within the Southern District of Georgia, the defendant, WILLIE WILLIAM SMITH, aided and abetted by Christopher Jodale Cunningham, Ricardo Mandrell Mobley, and others, by force, violence, and intimidation did take from the persons and presence of others, those being employees of Southern Bank, at 2455 Highway 88, Hephzibah, Georgia, more than $10,000 in United States Currency belonging to and in the care, custody, control, management and possession of the Southern Bank, in Richmond County, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing such offense, the defendants, did assault and put in jeopardy the lives of said employees and customers, by the use of firearms, in violation of Title 18, United States Code, Sections 2113(a) and 2113(d) and 2.

Id. at 2.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 5. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. By signing the Plea Agreement, Petitioner additionally attested he "read and carefully reviewed this agreement" with Mr. Pacheco and "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 7, 9.

At the guilty plea hearing, United States District Judge Dudley H. Bowen, Jr., first queried Petitioner as to his competence to proceed and found that he was competent to enter a guilty plea if he so desired. Id., doc. no. 115, (Rule 11 Tr.), pp. 5-7. Petitioner also testified under oath that he had enough time to discuss his case with Mr. Pacheco and that he was entirely satisfied with counsel's preparation and handling of the case. Id. at 7-8. Judge

3

Bowen reviewed the Armed Bank Robbery charge to which Petitioner was pleading guilty and the potential prison term of not more than twenty-five years.  Id. at 8-9.

Judge Bowen explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights.  Among the list of rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id. at 9-10.  In addition, Judge Bowen reviewed the appeal waiver and its limited exceptions, as well as confirmed that, other than the promises the government made in the plea agreement, no one had made him any promises in order to get him to plead guilty; Petitioner affirmed that no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed.  Id. at 12-15.

Next, Judge Bowen heard a factual basis for the guilty plea from FBI Task Force Officer Joseph K. Francois, III, including information that co-Defendant Mobley had identified Petitioner and co-Defendant Cunningham as parties to the crime and that Petitioner had driven the get-away car, which when recovered contained an identification card and cell phone belonging to Petitioner.  Id. at 15-21.  Petitioner stated to Judge Bowen he had no disagreement with anything Task Force Officer Francois had recounted.  Id. at 21.  Petitioner also told Judge Bowen he was guilty of, and wanted to plead to, Count One of the indictment.  Id. at 22.

### C.    Sentencing

The United States Probation Office then prepared a Presentence Investigation Report

("PSI") which set Petitioner's Total Offense Level at thirty-one, Criminal History Category at VI, and Guidelines imprisonment range at 188 to 235 months.  PSI ¶¶ 35, 47, 48, 82. Because Petitioner had previously been convicted of a crime of violence and a controlled substance offense, he was a career offender within the meaning of U.S.S.G. § 4B1.1.  PSI ¶ 32.  The offense level under that section of the Guidelines is thirty-four, which was subsequently reduced three points for Petitioner's acceptance of responsibility.  PSI ¶¶ 32-35.  The statutory maximum term of imprisonment for Petitioner's offense was twenty-five years, and had Petitioner been convicted of the 18 U.S.C. § 924(c) charge in Count Three dismissed as part of the Plea Agreement, the Court would have been required to add a seven-year sentence consecutive to any other sentence imposed.  18 U.S.C. §§ 2113(a) & (d); 18 U.S.C. § 924(c)(1)(A)(ii); PSI ¶¶ 81-83.

In the interim between the Rule 11 proceeding on October 19, 2015, and the sentencing proceedings on January 25, 2016, Petitioner embarked on a letter-writing campaign, aided by a jailhouse lawyer, accusing Mr. Pacheco of ineffective assistance of counsel and suggesting he wanted to withdraw his guilty plea.  CR 115-063, doc. no. 114, (Sent. Tr.), pp. 3-14.  Prior to proceeding with sentencing, Judge Bowen addressed Petitioner in detail about the letters in an effort to determine what Petitioner wanted to do, hearing first that Petitioner wanted to withdraw his guilty plea and then that he did not want to withdraw his plea.  Id. at 3-4.

Failing to get a straight answer from Petitioner about whether he actually wanted to withdraw his plea or go to trial,[1] Judge Bowen placed Petitioner under oath and asked

---

[1]Summarizing Petitioner's inability to give a straight answer, Judge Bowen stated Petitioner is "willing to say anything he wants to about anybody as long as he thinks it'll do him some good."  Sent. Tr. 10.  Foretelling the current § 2255 motion, Judge Bowen also stated, "So

whether Petitioner wanted to withdraw his guilty plea.  Id. at 13.

COURT:       Now, in those letters, Mr. Smith, you told me in many different ways that your lawyer was incompetent; that you were dissatisfied with his services; that he coerced you into pleading guilty; and that his assistance was ineffective.  Do you remember telling me that?

PET'R:       Yes, Your Honor.

COURT:       What do you tell me now, Mr. Smith?  Did he coerce you into signing a Plea Agreement.

PET'R:       No, Your Honor.

COURT:       Did you sign that Plea Agreement?

PET'R:       Yes, I did, Your Honor.

COURT:       And did you testify before me that that's what you wanted to do when you plead guilty?

PET'R:       Yes, Your Honor.

COURT:       Now, was your plea agreement freely and voluntarily made by you?

PET'R:       Yes, Your Honor.

COURT:       Did you write all these letters after you consulted with a jailhouse lawyer by the name of Brady or perhaps some other one?

PET'R:       Yes, Your Honor.
           . . . .

COURT:       I have offered you earlier, Mr. Smith, the opportunity to withdraw your plea and go to trial on the Indictment.  Do you want to do that?

---

what are you going to do, Mr. Smith?  As soon as I sentence you you're going to file a motion for 2255. . .?  You're going to say that you had ineffective assistance; is that right?"  Id. Petitioner answered, "No, Your Honor."  Id.

PET'R:          No, Your Honor.

    . . . .

COURT:          What can you tell me that Mr. Pacheco has done or not done in your case that indicates any sort of inadequacy in representation?

PET'R:          He did his job, Your Honor.

COURT:          What has he done that's ineffective?

PET'R:          He hadn't did [sic] anything ineffective, sir.

    . . . .

COURT:          Last time.  Do you want to withdraw your Plea Agreement?

PET'R:          No, Your Honor.

Id. at 14-17.

Having heard under oath that Petitioner was satisfied with Mr. Pacheco's representation and wanted to adhere to his Plea Agreement, Judge Bowen moved on to sentencing.  Upon consideration of Petitioner's objections to the PSI concerning his prior criminal history and career offender designation under the Guidelines, Judge Bowen overruled the objections and adopted the factual statement of the PSI and the application of the advisory Guidelines as his own findings of fact.  Id. at 20.  Mr. Pacheco then offered an extended argument in mitigation on Petitioner's behalf, and Petitioner apologized to the Court, his victims, and Mr. Pacheco.  Id. at 22-28, 31-32.  Judge Bowen imposed a sentence of 129 months imprisonment, nearly five years below the bottom end of the advisory Guidelines range of 188 to 235 months.  Id. at 34; CR 115-063, doc. no. 93.  In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

### D.     § 2255 Proceedings

Petitioner then timely filed the instant § 2255 motion to vacate, set aside, or correct

his sentence, raising the following claims:

(1)   Counsel provided ineffective assistance in the pretrial phase of the case
when he failed to:

(a) investigate the claim Petitioner was with his wife during the time of
the armed robbery;

(b)  communicate with Petitioner about the evidence in the case and the
reasons to plead guilty or go to trial;

(c) recognize Petitioner would qualify as a career offender; and

(d) negotiate a more favorable plea deal.

(2)   Counsel provided ineffective assistance in the sentencing phase of the
case when he failed to:

(a) review, discuss, and explain the PSI to Petitioner prior to
sentencing;

(b) file substantive objections to the PSI; submit evidence, and argue
for mitigation of Petitioner's punishment;

(c) object to an unreasonable sentence; and

(d) file a notice of appeal as requested.

(3)   Petitioner should not have been designated a career offender under the
advisory Sentencing Guidelines; and

(4)   Counsel provided ineffective assistance by failing to argue for a minor
role adjustment pursuant to Amendment 794 of the advisory Sentencing
Guidelines.

(See generally doc. nos. 1, 2, 10, 12.)

The Court held a hearing on Ground Two(d) and heard testimony from Petitioner, Mr.

Pacheco, and Mr. Pacheco's assistant, Ms. Deborah Oliver.  The Rule of Sequestration was

in effect during the hearing, so although Petitioner heard all the testimony, Mr. Pacheco and

Ms. Oliver were not present for each other's testimony.

### 1.      Petitioner's Evidence and Testimony Regarding Lost Appeal Claim

Petitioner originally submitted a form § 2255 motion in which he simply asserted without detail that Mr. Pacheco failed to file a notice of appeal as requested.  (Doc. no. 1, p. 5.)  The memorandum in support of the § 2255 motion was similarly devoid of details concerning this lost appeal claim.  (Doc. no. 2, pp. 5, 23-26.)  Therefore, the Court directed Petitioner to submit a sworn declaration concerning the exact nature of his lost appeal claim.  (See doc. no. 9.)  The Court specifically instructed Petitioner to detail (1) the circumstances of his discussions, if any with counsel regarding an appeal, and (2) the timing and manner in which he directed counsel to file an appeal, *i.e.*, when, where, and how Petitioner instructed counsel to file an appeal.  (Id.)

In response, Petitioner submitted a sworn statement explaining he and Mr. Pacheco discussed filing an appeal in detail within two days of sentencing, and Petitioner signed a waiver agreeing that he did not want to appeal.  (Doc. no. 12, pp. 2-3.)  However, "a few days later," Petitioner called Mr. Pacheco's office to tell counsel to file an appeal.  (Id. at 3.)  Mr. Pacheco was out of the office, so Petitioner left his message with the secretary.  (Id.)  Because Petitioner did not hear anything from Mr. Pacheco and was in transit to his Bureau of Prisons (BOP) facility, he asked his mother, Brenda Ross, and then-fiancé, Andrea King, to call Mr. Pacheco.  (Id.)  As Mr. Pacheco was not available by phone, Petitioner decided to write a letter dated June 5, 2016, asking for an appeal based on "Johnson and relevant conduct that he never objected to."[2]  (Id.)

---

[2]In Johnson v. United States, the Supreme Court found the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), to be void for vagueness and a violation of the Constitution's guarantee of due process.  Johnson, 576 U.S. -, 135 S. Ct. 2551, 2563 (2015).

At the evidentiary hearing, Petitioner again enhanced the details of his lost appeal claim.  Petitioner confirmed he met with Mr. Pacheco after sentencing at the Richmond County Jail, discussed his appeal options, and signed a waiver confirming he did not want to file an appeal.  Court's recording system, *For the Record*, (FTR) 11:35.40-:37.25; 11:44.10-:45.10.  At the hearing, however, Petitioner testified Ms. King made a three-way call to Mr. Pacheco's office prior to the transfer to his BOP facility, within fourteen days after sentencing, so that Petitioner could inform Mr. Pacheco he wanted to file a notice of appeal, but he had to leave a message with the secretary, a person whose name he could not remember.   FTR  11:37.50-:38.09;  11:40.58-:41.12;  11:41.26-.31;  11:45.20-.50.   After hearing Ms. Oliver testify, Petitioner again took the stand and swore that although he had never mentioned her name in any filing or testimony, she was the person he knew as Deborah who answered the telephone and took his message about wanting to file an appeal.  FTR 12:33.32-:34.05.  A second phone call to Mr. Pacheco's office yielded only a response from Ms. Oliver that Mr. Pacheco had not yet provided an answer about filing an appeal.  FTR 11:38.12-.28.

When Petitioner reached the BOP facilities in Oklahoma and then in Yazoo City, he checked again with his mother and fiancé, both of whom said they had called Mr. Pacheco's office about an appeal but had not been able to speak to him directly.  FTR 11:38.29-.55.  Petitioner then wrote a letter to Mr. Pacheco dated June 5, 2016, asking whether Johnson applied to his case, but he never received a response.  FTR 11:38-.58-:39.35; 11:47.58-:48.35; doc. no. 12, pp. 13-16.

### 2.    Mr. Pacheco's Testimony

Mr. Pacheco has more than twenty years of experience as an attorney, and he started working on federal criminal cases when he was first admitted to the Bar in 1993. FTR

11:52.24-.38.  He currently has a general practice of civil and criminal work, and he has tried

both state and federal cases, although the majority of his criminal cases are resolved through

plea agreements.  FTR 11:52.40-:53.34.  Mr. Pacheco knows how to file a federal criminal

appeal and would do so if instructed by a client, even if he thought the appeal had no merit.

FTR 11:53.38-:54.12.

During the course of his representation of Petitioner, Mr. Pacheco communicated

through letters and multiple jail visits, and the only person associated with Petitioner's case

who ever made a call on his behalf through the time of sentencing was Petitioner's alibi

contact, Lisa Smith.  FTR 11:54.30-:56.12.  Mr. Pacheco's assistant, Ms. Oliver, answers

ninety-five percent of the calls coming into Mr. Pacheco's office, and she follows a detailed

procedure of keeping track of messages in a carbon-copy message pad.  FTR 11:56.14-

:57.49.  If someone requested a personal call back from Mr. Pacheco, Ms. Oliver would write

that message in the carbon-copy pad, allowing the message to go to Mr. Pacheco yet

maintaining a record of the call.  FTR 11:57.50-:58.05.  If Ms. Oliver was able to answer the

question herself, for example about scheduling, or if she was able to obtain an immediate

answer from Mr. Pacheco, a message would not be recorded in the message pad.  FTR

11:56.39-:57.49; FTR 12:10.55-:11.04.

Mr. Pacheco recalled Petitioner's sentencing was out of the ordinary in that Petitioner

had written letters to Judge Bowen complaining Mr. Pacheco had provided ineffective

assistance of counsel.  Judge Bowen addressed the content of the letters at the start of the

sentencing hearing, and he offered Petitioner the chance to withdraw his guilty plea.  FTR

11:58.30-:59.45; 12:00.50-:01.04.  The other unusual aspect of the sentencing was the

government's downward departure motion pursuant to U.S.S.G. § 5K1.1 filed close in time

to the sentencing, requesting a reduction in Petitioner's sentence based on his assistance in the investigation and prosecution of co-Defendant Cunningham – a reduction that allowed Judge Bowen to take nearly five years off the bottom of the Guidelines range.   FTR 11:59.46-12:00.25; CR 115-063, doc. no. 87.

After sentencing, Mr. Pacheco met with Petitioner to discuss an appeal and the appellate rights Judge Bowen had also explained, but Petitioner chose not to appeal.  FTR 12:00.45-:04.00.  There is some disagreement as to the exact location of the meeting between Petitioner and Mr. Pacheco, but both sides agree the consultation occurred at a local jail within one to two days of the sentencing.  FTR 12:03.00-.24.  Although Mr. Pacheco and Petitioner both agree Petitioner signed a waiver form, no executed waiver form could be located, and Mr. Pacheco acknowledged he simply could not find the form in his files.  FTR 12:02.15-:04.00; 12:12.34.

After Petitioner made his choice not to appeal, Mr. Pacheco's first communication from Petitioner was a letter in May or June of 2016 inquiring about a possible sentence reduction under Johnson.  FTR 12:04.25-:05.50; (doc. no. 12, pp. 13-16.)  Petitioner's mother, Ms. Ross, also phoned Mr. Pacheco's office twice to ask about a Johnson reduction, but Mr. Pacheco never spoke with her.  FTR 12:05.30-:08.29.  He confirmed the phone calls from Ms. Ross by checking the carbon-copy message pad used by Ms. Oliver to record messages, but no such message from Ms. King, Petitioner's then fiancé, was recorded on the message pad.  Id.  From the point of his after-sentencing consultation with Petitioner in January 2016 until approximately May 31, 2016, Mr. Pacheco was never contacted by Petitioner or any member of Petitioner's family.  FTR 12:08.56-:09.43.  Mr. Pacheco would

have filed an appeal had he received a message indicating Petitioner wanted him to do so. FTR 10:09.48-:10.07.

### 3. Ms. Oliver's Testimony

Ms. Oliver began working in Mr. Pacheco's office in April of 2015, after obtaining an accounting degree and working in the Marshal's Office at the Augusta Airport. FTR 12:14.00-.12; 12:29.12-.48. As an officer manager for Mr. Pacheco, Ms. Oliver answers phone calls and emails, sends out letters, and takes care of invoices and payments. FTR 12:14.15-.28. As part of those duties, Ms. Oliver has established a detailed procedure for taking phone messages.

If Mr. Pacheco is not in the office, Ms. Oliver asks who is calling and what question they have; if she cannot answer the question herself, she will record the message in the carbon-copy message pad. FTR 12:14.39-:15.47. If Mr. Pacheco is in the office and takes the call immediately, she does not record the phone call in the message pad. Id. Because she may get twenty-five to thirty calls per day, Ms. Oliver tries to answer as many questions as possible without generating a message. FTR 12:15.40-:16.00; 12:24.37-:25.36. Ms. Oliver does not normally get calls from detained clients, and if she does, she is not authorized to accept collect calls. FTR 12:16.13-:17.10. If someone attempts a collect call, she will tell Mr. Pacheco about it but not necessarily write it in the message pad. Id.

Ms. Oliver is familiar with Petitioner's case because she reviewed the entirety of the discovery package when produced, and the case stands out in her memory because there was a lot of information to review in detail. FTR 12:17.52-:19.00. Ms. Oliver did not receive phone calls during the trial from Petitioner's family members, but she did recall Petitioner's mother calling in May 2016. FTR 12:19.10-:20.30. Ms. Oliver took a message from

Petitioner's mother on May 31, 2016, asking if Petitioner qualified for a reduction under Johnson, and she called Ms. Ross back after Mr. Pacheco told her what response to give. FTR 12:21.25-:23.30.  On June 7, 2016, Petitioner's mother called back to again ask about Petitioner's eligibility for a reduction in his sentence under Johnson.  FTR 12:23.50-:24.15.

Ms. Oliver never received a phone call from Petitioner or someone on his behalf within the weeks after Petitioner's sentencing in January of 2016.  If she had received such a call, she would have given any message about filing an appeal to Mr. Pacheco and retained the carbon copy.  FTR 12:26.00-:27.25.  In fact, she has no recollection of ever speaking with Petitioner on the phone.  FTR 12:30.34-.43.  Nor does Ms. Oliver have any recollection of ever having a conference call with Petitioner and his fiancé, and such an unusual occurrence would have stood out in Ms. Oliver's memory.  FTR 12:26.29-.43.  There is no record of any call regarding an appeal for Petitioner in Ms. Oliver's carbon copies of phone messages for Mr. Pacheco.  FTR 12:26.55-:27.32.

## II.   DISCUSSION

Petitioner alleged ineffective assistance of counsel throughout the pretrial, plea, and sentencing phases of the case.  Judge Bowen addressed these allegations when he gave Petitioner an opportunity to withdraw his guilty plea prior to sentencing.  Despite assuring Judge Bowen, under oath, Mr. Pacheco had not mishandled his case in any way, (Sent. Tr. 14-17), Petitioner is again complaining about Mr. Pacheco's representation despite the favorable sentence for Petitioner.  The Court concludes now, just as Petitioner previously swore to Judge Bowen, Mr. Pacheco did not mishandle Petitioner's case or provide constitutionally ineffective assistance in any respect.

### A.    Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  Indeed, "strategic choices are 'virtually unchallengeable.'"  Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690).  "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy."  Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.  Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id.  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask

only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).  Furthermore, "where the alleged error of counsel is a failure to investigate or discovery potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to

trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), cert. denied, 568 U.S. 966 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (en banc) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

**B.    Petitioner Is Not Entitled to Relief on His Ground Two(d) Ineffective Assistance Claim Because He Did Not Ask Counsel to File an Appeal, and There Is No Dispute Counsel Otherwise Fulfilled His Duty to Consult with Petitioner About an Appeal.**

Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule. "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000) (holding it is professionally unreasonable for attorney to fail to follow defendant's express appeal instructions). Thus, if the Court determines Mr. Pacheco failed to

honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

The threshold issue relates to credibility. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002)); see also United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing credibility determinations are within province of factfinder); Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004) (recognizing court's opportunity to observe and study witnesses to make credibility determination concerning testimony on ineffective assistance claim). In making its credibility determination, the Court must take into consideration not only the interests of the witness, but also "the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand." Ramirez-Chilel, 289 F.3d at 749, 750 (citation omitted).

Here, the Court specifically credits the testimony of Mr. Pacheco and Ms. Oliver over Petitioner. Mr. Pacheco, who is a seasoned attorney with a long history of criminal defense work, is well-known to the Court and has demonstrated himself to be an ethical and zealous advocate for his clients. The notion Mr. Pacheco ignored a specific request to file a notice of appeal on Petitioner's behalf and then lied to the Court about this circumstance is incredible. At the hearing, Mr. Pacheco's testimony was internally consistent and logically sound, and remained so during cross-examination. Mr. Pacheco recounted his representation of Petitioner in a detailed and methodical manner, referring to his records when necessary. Nor did Mr. Pacheco attempt to obfuscate when explaining the absence of a signed appeal waiver

18

form; he candidly acknowledged he had searched his files and simply could not find the signed form.

Moreover, despite invocation of the Rule of Sequestration, both Mr. Pacheco and Ms. Oliver testified consistently that (1) neither Petitioner nor anyone on his behalf called the office regarding an appeal; (2) Ms. Oliver would have recorded any such message in the phone message book, for which she would still have a carbon copy; and (3) there is no carbon copy of a phone message regarding such an appeal.

In contrast with the unwavering and consistent testimony of Mr. Pacheco and Ms. Oliver, Petitioner's self-serving testimony is unbelievable. First, Petitioner's description of events was ever-changing over the course of these proceedings. In his initial motion, he provided no details of his supposed instruction to Mr. Pacheco to file a notice of appeal. When prompted by the Court for specific details, Petitioner submitted an affidavit conceding he initially instructed Mr. Pacheco not to file an appeal but then claiming "a few days later" he decided to call Mr. Pacheco's office to ask that an appeal be filed. (Doc. no. 12, p. 3.) Petitioner claimed to have left his message with an unnamed secretary. (Id.)

By the time of the hearing, Petitioner's story had morphed into a three-way conference call initiated, specifically within the appeal window of fourteen days of sentencing, by his then-fiancé to Mr. Pacheco's office. They purportedly left a message with the secretary, a person whose name he could not remember. After hearing Ms. Oliver state her full name and testify, Petitioner returned to the stand and suddenly recalled he knew the secretary by the name "Deborah" and was sure Ms. Oliver was the person with whom he had spoken. Ms. Oliver's testimony forecloses any reasonable chance of this being true.

Furthermore, Petitioner did not have his then fiancé appear as a witness, either in person or by affidavit, to support his version of events.

At best, Petitioner produced a letter dated June 5, 2016, in which he queried Mr. Pacheco, as did his mother through the two phone calls placed to Mr. Pacheco's office, about any applicability of <u>Johnson</u> to his sentence.  (<u>See</u> doc. no. 12, pp. 13-14.)  The letter does not make any mention of an appeal.  (<u>Id.</u>)  Petitioner's ever-changing story is consistent not with a credible witness, but as Judge Bowen described during the sentencing proceedings, a person willing to say whatever he thinks somebody wants to hear if it will benefit his own interests.  In light of these considerations, the Court finds that Petitioner never instructed Mr. Pacheco to file an appeal.

Finally, even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal,'" and if counsel did not consult, whether there was a duty to do so.  <u>Thompson v. United States</u>, 504 F.3d 1203, 1206-08 (11th Cir. 2007) (citing <u>Flores-Ortega</u>, 528 U.S. at 478, 480).  Here, there is no dispute Mr. Pacheco did in fact consult with Petitioner about filing an appeal.  Although Petitioner and Mr. Pacheco disagree about where the consultation occurred, and Mr. Pacheco was unable to locate the executed waiver form, both testified at the hearing that they discussed the merits of filing an appeal, and Petitioner initially opted to sign a waiver of his right to appeal.  Indeed, in his court-ordered statement attested to under penalty of perjury, Petitioner acknowledges he discussed filing an appeal with Mr. Pacheco.  (Doc. no. 12, p. 3.)  Thus, Mr. Pacheco fulfilled any duty he had to consult with Petitioner about filing an appeal, and Petitioner is not entitled to relief on Ground Two(d).

### C. Petitioner Is Not Entitled to Relief on Any of the Pretrial Ineffective Assistance Claims in Ground One.

Petitioner asserts Mr. Pacheco provided ineffective assistance in the pretrial phase of the case when he failed to: (a) investigate the claim Petitioner was with his "wife" during the time of the armed robbery;[3] (b) communicate with Petitioner about the evidence in the case and the reasons to plead guilty or go to trial; (c) recognize Petitioner would qualify as a career offender; and (d) negotiate a more favorable plea deal. These claims are barred by the entry of a valid guilty plea, and in any event are devoid of merit.

### 1. Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Claims in Ground One.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a

---

[3]Petitioner testified he had a common law marriage with Lisa Smith. FTR 11:46.45-:47.10.

21

defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Bowen informed Petitioner in clear terms of the charge to which he was pleading guilty, and Petitioner testified that he understood the charges. Rule 11 Tr. 8-9. Judge Bowen also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 9-11. Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Bowen confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 12-15.

Additionally, Judge Bowen informed Petitioner of the possible penalty he faced upon conviction. In particular, Judge Bowen explained the maximum twenty-five year prison term for conviction of armed bank robbery. Id. at 9. Finally, Petitioner also testified he had

enough time to discuss the case with Mr. Pacheco and was satisfied with the help he had received from him.  Id. at 7-8; see also Plea Agreement, p. 9 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Bowen's thorough plea colloquy ensured that Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Not only did Judge Bowen ensure the knowing and voluntary nature of the guilty plea at the Rule 11 hearing, but he again revisited the issue at sentencing and offered Petitioner multiple opportunities to withdraw his guilty plea.  Sent. Tr. 3-7, 13-17.  Petitioner, under oath, declined to do so and insisted he entered a voluntary guilty plea with the competent assistance of Mr. Pacheco.  Id. at 14-17.  Petitioner has not argued, let alone shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83.

At the Rule 11 hearing, Petitioner also admitted to the facts presented by the government as the factual basis for the plea.  Rule 11 Tr. 15-22.  This factual presentation included information that co-Defendant Mobley had identified Petitioner and the third co-Defendant as parties to the crime and that Petitioner had driven the get-away car, which when recovered contained an identification card and cell phone belonging to Petitioner.  Id. Petitioner stated to Judge Bowen he had no disagreement with anything Task Force Officer Francois had recounted in his factual presentation and confirmed his desire to plead guilty to the armed bank robbery charge delineated in the Plea Agreement.  Id. at 21-22.

Moreover, when Petitioner launched his letter writing campaign to Judge Bowen after the initial guilty plea proceedings, Judge Bowen again put Petitioner under oath at the

beginning of the sentencing proceedings and repeatedly asked Petitioner whether his initial sworn affirmations made in entering his guilty plea were still true and gave Petitioner multiple opportunities to withdraw his guilty plea.  Sent. Tr. 13-17.  Petitioner repeatedly declined to withdraw his plea, acknowledged nothing Mr. Pacheco had done in representing him was deficient, and swore he wanted to proceed with the plea agreement and accept its significant benefits.  Id.

Accordingly, Petitioner cannot validly claim that his guilty plea was unknowingly or involuntarily entered or that there was no factual basis established for the guilty plea.  Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding, as well as at the subsequent sentencing.  "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").  As Petitioner's plea was knowing and voluntary, his claims in Ground One are barred.

### 2. Even if the Claims Were Not Barred by Entry of a Valid Guilty Plea, the Claims Are Without Merit.

In Ground One(a) and (b), Petitioner claims Mr. Pacheco did not adequately investigate the case and communicate with Petitioner about the case, including that he was with his common law wife, Lisa Smith, at the time of the robbery and did not adequately pursue all leads available from the government's discovery package.  Mr. Pacheco filed a

notice of alibi defense concerning Ms. Smith early on in the case.  CR 115-063, doc. no. 54.

Petitioner also testified at the hearing Mr. Pacheco spoke with Ms. Smith about the alibi

defense.  FTR 11:46.44-:47.15.  Furthermore, Mr. Pacheco testified he met with Petitioner

and reviewed the discovery multiple times, (FTR 11:54.32-:55.20), and Petitioner's own

briefing describes multiple meetings with Mr. Pacheco.  (Doc. no. 2, p. 12.)  Most difficult

for Petitioner to overcome is his prior sworn assertions to Judge Bowen that he had enough

time to discuss the case with Mr. Pacheco and was entirely satisfied with his preparation and

handling of the case, (Rule 11 Tr. 7-8), as well as his failure to identify anything, when asked

specifically, Mr. Pacheco had not done in the case.  Sent. Tr. 16.

These same sworn assertions to Judge Bowen belie Petitioner's contention Mr.

Pacheco did not discuss the merits of pleading guilty versus going to trial or adequately

review the Plea Agreement.  As described in detail above, Judge Bowen thoroughly reviewed

the Plea Agreement at the Rule 11 proceedings, and Petitioner's signature on the Plea

Agreement attests Petitioner "read and carefully reviewed this agreement with my attorney."

CR 115-063, doc. no. 71, p. 9.  Even now, Petitioner does not provide any specific factual

information Mr. Pacheco allegedly did not adequately review or pursue that would have

changed the outcome of the case or caused him to go to trial rather than plead guilty,

particularly in light of the fact that Petitioner attested to his guilt at the Rule 11 proceedings.

Indeed, Petitioner chose to plead guilty after learning co-Defendant Mobley, the cohort who

identified Petitioner as the get-away driver, had himself accepted a plea agreement.

Petitioner has shown neither deficient performance nor prejudice.

In Ground One(c), Petitioner asserts Mr. Pacheco failed to warn Petitioner he would

be categorized as a career offender under the Guidelines and misadvised him about his

sentencing exposure.  Even if the Court were to accept for the sake of argument, Mr. Pacheco did not provide an exactly correct prophesy of Petitioner's potential sentence, Petitioner cannot show the requisite prejudice.  So long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging that counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Guidelines.  See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (per curiam) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); see also United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (per curiam) (affirming district court's refusal to allow withdrawal of guilty plea with finding that defendant failed to show plea was not entered knowingly and voluntarily where judge at plea hearing set forth maximum possible penalties and fact that court was not bound by counsel's sentencing estimates).

At the Rule 11 proceedings, prior to accepting the guilty plea, Judge Bowen reviewed the possible statutory penalty of twenty-five years.  Rule 11 Tr. 8-9.  Moreover, after reviewing the PSI and knowing he faced the career offender enhancement, but prior to the imposition of sentence, Judge Bowen gave Petitioner multiple opportunities to withdraw his guilty plea, but Petitioner declined.  Sent. Tr. 13-17.  If the sworn assertions at sentencing were not enough, and they are, Petitioner's own submissions in this case show he knew about the sentencing implications in his case because he attached a letter discussing sentencing

which he admitted he sent to Judge Bowen *prior* to sentencing.   (Doc. no. 12, p. 4.) Petitioner has not shown the requisite prejudice.

Finally, in Ground One(d), Petitioner claims Mr. Pacheco was ineffective for failing to negotiate a more favorable plea agreement.   In his conclusory claim, Petitioner incredibly asserts the Plea Agreement was of no benefit to him.   He is mistaken.   In exchange for his guilty plea to one count of a three-count indictment and waiving his direct appeal rights, Petitioner gained an acceptance of responsibility reduction, an opportunity to cooperate and earn a § 5K1.1 reduction, and eliminated the possibility of a mandatory, seven-year *consecutive* sentence for the § 924(c) charge.   Plea Agreement; see also 18 U.S.C. § 924(c)(1)(A)(ii); PSI ¶¶ 81-83.   Petitioner received a sentence nearly five years below the bottom of the advisory Guidelines range.

As detailed by Respondent, (doc. no. 8, pp. 25-26), and in the testimony of Task Force Agent Francois to which Petitioner had no objection, (Rule 11 Tr. 15-21), the evidence against Petitioner was strong, and Petitioner offers no basis upon which Mr. Pacheco could have bargained for a better deal.   A bald assertion that some sort of other, more favorable plea deal might have been possible fails to establish the requisite prejudice.   Cummings v. United States, No. CV 112-224, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013) (collecting cases for proposition that conclusory, after-the-fact assertion concerning possibility of more favorable plea deal insufficient to show prejudice).   As Petitioner cannot show prejudice, his claim fails.

### D.   Petitioner Is Not Entitled to Relief on Any of the Sentencing Ineffective Assistance Claims in Ground Two.

Petitioner also asserts Mr. Pacheco provided ineffective assistance in the sentencing phase of the case when he failed to: (a) review, discuss, and explain the PSI to Petitioner

prior to sentencing; (b) file substantive objections to the PSI; submit evidence and argue for mitigation of Petitioner's punishment, and (c) object to an unreasonable sentence.[4]  All of these claims are belied by the record.

First, at sentencing, Judge Bowen asked Petitioner, after he had been placed under oath:  "Have you had an opportunity to read and discuss the Presentence Report with your lawyer?"  Petitioner responded, "Yes, Your Honor."  Sent. Tr. 18.  Judge Bowen also asked if there were any objections to the factual accuracy or application of the Guidelines, to which Petitioner responded, "Yes, Your Honor."  Id.  Judge Bowen then took up those objections with Mr. Pacheco, considered the Probation Officer's response, and overruled the objections.[5]  Id. at 20; see also PSI Add.

Moreover, contrary to Petitioner's "potted plant" characterization of Mr. Pacheco's presentation at sentencing, Mr. Pacheco spoke at length concerning Petitioner's:  (1) multiple refusals of a co-Defendant's prior entreaties to participate in criminal activity but eventual agreement in an effort to support Petitioner's two young children; (2) lack of knowledge about the use of a firearm during the robbery; (3) admission of criminal conduct and cooperation with the government; (4) prior criminal history as a young adult that resulted in the career offender enhancement; and (5) cordial and respectful attitude prior to getting bad advice from a jailhouse lawyer.   Sent. Tr. 22-27.   Mr. Pacheco also pointed out that Petitioner's Guidelines calculation was about twice that of his two co-Defendants, and Judge Bowen's ultimate conclusion was that he would not impose a sentence greater than co-

---

[4]Petitioner's other ineffective assistance claim regarding a lost appeal was rejected in Part II(B), *supra*.

[5] The objections related to the calculation of Petitioner's criminal history and his designation as a career offender.  PSI Add.; Sent. Tr. 18-20.

Defendant Cunningham.  Id. at 31-32, 34.  In fact, Judge Bowen departed nearly five years below the bottom of the Guidelines range and commented the departure was probably much more than the government anticipated.  Id. at 34.

Petitioner was not prejudiced by Mr. Pacheco's presentation at sentencing, nor by the decision not to object to a sentence less than half the statutory maximum for armed bank robbery and nearly five years below the bottom of the Guidelines range.  All of Petitioner's claims in Ground Two fail.

### E.    Petitioner Procedurally Defaulted Grounds Three and Four.

Because it is not entirely clear whether Petitioner intended his sentencing claims in Grounds Three and Four to be wrapped into an ineffective assistance of counsel claim or as stand-alone, sentencing error claims, in an abundance of caution, the Court will address both scenarios.

### 1.    Procedural Bar to § 2255 Review and the Exceptions

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)).  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

In addition, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion. United States v. Peloso, 824 F.2d 914, 915 (11th Cir. 1987). Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack. Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*). However, despite these restrictions on raising previously available challenges, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings, Massaro v. United States, 538 U.S. 500, 509 (2003), and the Court accordingly addresses Petitioner's ineffective assistance claims herein.

Therefore, other than an ineffective assistance of counsel claim, for the Court to review a claim otherwise barred in collateral proceedings, Petitioner must show both cause and actual prejudice from the error of which he complains. Brown, 720 F.3d at 1333; Montano, 398 F.3d at 1280. "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Actual

innocence "applies to a severely confined category:  cases in which new reliable evidence

shows it is more likely than not that no reasonable juror would have convicted [the

petitioner]." McQuiggin v. Perkins, 569 U.S. -, 133 S. Ct. 1924, 1933 (2013) (internal

quotations omitted) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see also McKay v.

United States, 657 F.3d 1190, 1196 (11th Cir. 2011).

**2.  Grounds Three and Four Are Procedurally Defaulted Because Petitioner Did Not Raise Them on Direct Appeal.**

As discussed in detail above, Petitioner did not ask Mr. Pacheco to file an appeal on

his behalf, and Petitioner has not shown a sentencing error constituting a fundamental defect

such that such claims would be reviewable in these § 2255 proceedings.  Thus his Guidelines

challenges raised in Grounds Three and Four are defaulted.   Although an ineffective

assistance of counsel claim may serve as "cause" for failing to raise an otherwise

procedurally barred claim, Murray, 477 U.S. at 488, as discussed in detail herein, Petitioner

has not presented any such valid ineffective assistance claims.  Nor can Petitioner satisfy the

demanding actual innocence standard because by his own testimony at the Rule 11

proceedings, he admitted his participation in the armed bank robbery to which he pleaded

guilty.

**a.  Even if Petitioner Could Escape the Bar to His Ground Three Claim That He Should Not Have Been Designated a Career Offender, His Claim Is Without Merit.**

Because Petitioner had previously been convicted of a crime of violence and a

controlled substance offense, he was designated a career offender within the meaning of

U.S.S.G. § 4B1.1.  PSI ¶ 32.  The convictions used to apply the designation were aggravated

31

assault, felony obstruction of a law enforcement officer, and possession of cocaine with intent to distribute.  PSI ¶¶ 32, 39-41.  Relying on non-binding case law from outside the Eleventh Circuit, Petitioner argues, without benefit of any factual detail, that after Mathis v. United States, 579 U.S. -, 136 S. Ct. 2243 (2016), he no longer qualifies as a career offender, and therefore he should be resentenced without the Chapter Four enhancement.[6]  (Doc. no. 4, pp. 2-6.)

When Petitioner was sentenced, the Guidelines definition of crime of violence included any federal or state offense with a term of imprisonment exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  Moreover, the Application Notes explained, "'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offense, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling."  U.S.S.G. § 4B1.2(a) & cmt. n.1 (Nov. 1, 2015).  The Guidelines definition of a "controlled substance offense" was: "An offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance. . . or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2(b).

Petitioner has provided no factual detail to support his conclusory assertion he does not qualify as a career offender under the Guidelines, and the Court will not hazard a guess as to what Petitioner intended his argument to be.  However, the government has provided documentation confirming the convictions identified in the PSI fall squarely within the

---

[6]In Mathis, the Supreme Court explained how courts are to interpret and apply the enumerated offenses provision of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), when the proposed predicate conviction is based on a state statute with "disjunctive phrasing" that raises the issue as to whether the statute aligns precisely with the generic offense as intended by Congress.  136 S. Ct. at 2249, 2253.

definition of a qualifying violent felony or controlled substance offense.  (<u>See</u> doc. no. 8, Ex. B (felony conviction for Possession of Cocaine with Intent to Distribute carrying ten-year prison sentence); Ex. C (conviction for aggravated assault based on shooting victim with a handgun); Ex. D (conviction on two counts of felony obstruction of an officer based on fighting with one deputy and fighting and cutting a second deputy above his right eye during attempt to arrest Petitioner on outstanding warrant)).)

Even if Petitioner had presented any factual detail in support of his claim, judges within the Southern District of Georgia have "repeatedly held a Georgia aggravated assault is a 'violent felony' under the elements clause of the ACCA (and by extension, the Guidelines), post-<u>Johnson</u>" and post-<u>Mathis</u>.[7]   <u>Shuck v. United States</u>, No. CV 416-211 / CR 411-007, 2017 WL 465682, at *(S.D. Ga. Jan. 31, 2017) (collecting cases), *adopted by* 2017 WL 693285 (S.D. Ga. Feb. 21, 2017).  Likewise, a felony obstruction conviction is categorically a violent felony under the "elements clause" of the "crime of violence" definition.  <u>United States v. Brown</u>, 805 F.3d 1325, 1327 (11th Cir. 2015).  Thus, career offender designation is proper for Petitioner even before the Court also considers the felony drug conviction for possession with intent to distribute cocaine for which Petitioner received a sentence of ten years of confinement.  Petitioner is not entitled to relief on Ground Three.

> **b.   Even if Petitioner Could Escape the Bar to His Ground Four Claim That He Deserved a Minor Role Reduction, His Claim Is Without Merit.**

Petitioner argues, again without any specific factual support concerning his circumstances, that he should have been considered for a minor role reduction pursuant to

---

[7]Because the definition of "crime of violence" in U.S.S.G. § 4B1.2 and the definition under the ACCA of "violent felony" are substantially the same, courts may rely on cases interpreting the ACCA when interpreting the Guidelines.  <u>United States v. Martin</u>, 864 F.3d 1281, 1282 (11th Cir. 2017) (*per curiam*).

Amendment 794 of the Guidelines.[8]   Even without consideration of the substance of Amendment 794, Petitioner's claim fails on the merits because the career offender designation was properly applied, as explained *supra*, and therefore role adjustments do not apply.  U.S.S.G. § 4B1.1, cmt. 3(C) (Nov. 1, 2015); see also PSI ¶¶ 24-35.  In any event, Petitioner has not shown that even if role adjustments applied, he would qualify for the reduction he seeks.

Effective November 1, 2015, Amendment 794 set out guidance for the determination of whether a defendant should be granted a mitigating role reduction under U.S.S.G. § 3B1.2. Under this provision of the Guidelines, a sentencing court may apply a two-level reduction to the base offense level "if the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b).  The comments to § 3B1.2 explain a minor role reduction is available to a defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity."  Id. cmt. n.3(A).

However, Amendment 794 made no substantive change to § 3B1.2.   Rather, Amendment 794 "merely clarified the factors to consider for a minor-role adjustment."  See United States v. Cruickshank, 837 F.3d 1182, 1194 (11th Cir. 2016).  Post Amendment 794, the commentary to § 3B1.2 lists the following considerations for analyzing a minor-role claim:

> (i)     the degree to which the defendant understood the scope and structure of
>         the criminal activity;

---

[8]Because of the lack of details regarding this claim, it is not entirely clear whether Petitioner intended (1) to make an ineffective assistance claim Mr. Pacheco should have argued for a minor role adjustment, or (2) the Court should have automatically considered such a reduction.  As discussed herein, there is no merit to either contention.

(ii)     the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)     the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)      the degree to which the defendant stood to benefit from the criminal activity.

United States v. Monzo, 852 F.3d 1343, 1346 (11th Cir. 2017) (citing U.S.S.G. § 3B1.2 cmt. n.3(C))

As the proponent of the reduction, Petitioner bears the burden of showing his mitigating role by a preponderance of the evidence.  See United States v. Rodriguez De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (*en banc*).  However, he offers *absolutely no* substantive argument in support of his contention that he was eligible for a minor-role reduction.  As Respondent succinctly summarizes:

> The undisputed evidence set forth in the Rule 11 hearing and the PSI clearly demonstrate that [Petitioner] texted with [co-Defendant] Cunningham about getting gloves days before the robbery occurred; [Petitioner] borrowed a car the morning of the robbery; he conducted surveillance with his codefendants on potential bank targets; he was the getaway driver during the robbery; and he provided the gloves used by his armed codefendant.  (PSI ¶¶ 5-16; [Rule 11 Tr.] 15-21.)  This evidence shows that [Petitioner] was integrally involved with the planning and execution of the armed bank robbery . . . .

(Doc. no. 8, pp. 44-45.)

As Petitioner offers nothing in support of his claim of entitlement to a minor-role reduction other than his conclusory statement that he "was a mere 'peon' in the entire scheme, and was deserving of consideration for the provision," (doc. no. 4, p. 8), and in light of the

information set forth above, Mr. Pacheco had no basis for arguing for a minor-role reduction. If Petitioner intended to make an ineffective assistance claim based on the failure to request a minor role reduction, he has not shown deficient performance or prejudice.  See Strickland, 466 U.S. at 688, 697.  As a stand-alone claim that the Court should have automatically considered Petitioner for such a reduction, Petitioner has not argued, and the record does not contain, facts establishing Petitioner was eligible for such consideration.  Petitioner is not entitled to relief on Ground Four.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 16th day of October, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA